**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SADAT ABBAS, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 09-CV-3413 |
| v. | ) ) | Judge Joan B. Gotschall |
| SELLING SOURCE, LLC, a Delaware limited liability company, | ) ) ) | Magistrate Judge Maria Valdez |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT SELLING SOURCE, LLC'S MOTION TO DISMISS**

.

Michael J. McMorrow
Evan M. Meyers
Ryan D. Andrews
KamberEdelson, LLC
350 N. LaSalle St., Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
mmcmorrow@kamberedelson.com
emeyers@kamberedelson.com
randrews@kamberedelson.com

Dated: September 18, 2009                    *Attorneys for Plaintiff*

### Table of Contents

I. INTRODUCTION ...........................................................................................1

II. STATEMENT OF FACTS ...........................................................................2

III. ARGUMENT ...............................................................................................2

    **A. The Complaint Satisfies Federal Court Pleading Requirements**............................2

    **B. The TCPA Does Not Require That A Plaintiff Be Charged For The Call**..............5

    **C. The TCPA Applies To Text Messages** ......................................................................7

        1. The FCC has expressly stated that a text message is a "call" under the TCPA..8

        2. Relevant state and federal court precedent holds that the TCPA applies to text message calls ...............................................................9

        3. The FCC's rulings are dispositive on the issue of whether the TCPA applies to text message calls ...............................................10

        4. Defendant's reference to other statutes is largely irrelevant............................12

    **D. The TCPA Should Apply To The Instant Case** ......................................................15

    **E. The TCPA As Applied Does Not Violate the First Amendment** ...........................18

        1. The TCPA, as applied here, would directly advance a substantial government interest in minimizing the invasion of privacy caused by mass, unsolicited text message calls.........................................................................19

        2. The TCPA, as applied, is narrowly tailored to serve the substantial government interest.........................................................................23

        3. Application of the TCPA in this case would leave ample alternative channels of communication ...............................................................25

        4. The TCPA as applied is not unconstitutionally vague......................................28

IV. CONCLUSION ...........................................................................................29

## Table of Authorities

### United States Supreme Court Cases

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .........................................................................3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ............................3

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557 (1980) ...............................................................................................................................19

*Chevron v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1987) ......................................11

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) ...............14

*Russello v. U.S.*, 464 U.S. 16, 104 S. Ct. 296 (1983) ....................................................14

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ..............................................................12

*TRW Inc. v. Andrews*, 534 U.S. 19, 122 S.Ct. 441 (2001) .............................................16

*U.S. v. Amer. Trucking Assoc.*, 310 U.S. 534, 60 S. Ct. 1059 (1940) .......................9, 10

*U.S. v. Mead Corp.*, 533 U.S. 218 (2001) ......................................................................12

*U.S. v. Price*, 361 U.S. 304, 80 S. Ct. 326 (1960)

### United States Circuit Court of Appeals Cases

*Azure v. Morton*, 514 F.2d 897 (9th Cir. 1975) ............................................................ 6-7

*Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996) ...............................................................22

*Destination Ventures v. FCC*, 46 F.3d 54 (9th Cir. 1995) ............................................18

*Horina v. City of Granite City, Illinois*, 538 F.3d 624 (7th Cir. 2008) ....................20, 27

*In re the Matter of Merchants Grain, Inc.*, 93 F.3d 1347 (7th Cir. 1996) .......................7

*In re the Search of the Office of Ken Tylman*, 245 F.3d 978 (7th Cir. 2001) .................19

*Lac Courte Oreilles Bank of Lake Superior Chippewa Indians of Wisconsin v. U.S.*, 367 F.3d 650 (7th Cir. 2004) ....................................................................................................................19

*Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003) ...........18, 26

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ...............6

*O'Kane v. Apfel*, 224 F.3d 686 (7th Cir. 2000) ................................................................6

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ...........5, 10, 11, 12, 16, 20, 22

*Shelby County State Bank v. Van Diest Supply Co.,* 303 F.3d 832 (7th Cir. 2002).........................7

*Squillacote v. U.S.*, 747 F.2d 432 (7th Cir. 1984)........................................................ 6-7

*Thompson v. Ill. Dep't of Prof'l Ref.*, 300 F.3d 750 (7th Cir. 2002) ...............................2

*Van Bergen v. State of Minnesota*, 59 F.3d 1541 (8th Cir. 1995)................................21

*Witzke v. Femal*, 376 F.3d 744 (7th Cir. 2004).........................................................16

## United States District Court Cases

*Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications*, 329 F. Supp. 2d 789 (M.D. La. 2004) ..............................................................................28

*Carpenters' Health and Welfare Fund of Philadelphia v. Kia Ent. Inc.*, 2009 WL 2152276 (E.D.Pa. July 15, 2009)........................................................................................4

*Davis v. U.S.* 569 F. Supp. 2d 91 (D.D.C. 2008) ...................................................15

*Hicks v. Client Services, Inc.*, No. 07-61822-CIV, 2008 WL 547911 (S.D. Fla. Dec. 11, 2008) ..............................................................................17

*Holtzman v. Caplice*, No. 07 C 7279, 2008 WL 2168762 (N.D. Ill. May 23, 2008).....5, 18, 23, 26

*Italia Foods, Inc. v. Marinov Enterprises, Inc.*, No. 07 C 2494, 2007 WL 4117626 (N.D. Ill. Nov. 16, 2007) .................................................................................18, 26

*Kitson v. Bank of Edwardsville*, No. 06-528-GPM, 2006 WL 3392752 (S.D. Ill. Nov. 22, 2006) .................................................................................14

*Lockridge v. Village of Alsip, Illinois*, No. 03 CV 6720, 2005 WL 946880 (N.D. Ill. Apr. 18, 2005) ...........................................................................................................21

*Minnesota v. Sunbelt Communs. & Mktg.*, 282 F. Supp. 2d 976 (D. Minn. 202).......................18

*Pena v. Int'l Union of Op. Engineers, Local 150, AFL-CIO*, 2009 WL 2177239 (N.D. Ill. July 21, 2009) ....................................................................................................4

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007) ..............................................................................................18, 23

*Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc,* --- F.Supp.2d ----, 2009 WL 1957060 (N.D. Ill. July 8, 2009)........................................................................................3-4

*U.S. v. Southern Indiana Gas & Elec. Co.*, 245 F. Supp. 2d 994 (S.D. Ind. 2003) .................28, 29

*United Stationers, Inc. v. U.S.*, 982 F. Supp. 1279 (N.D. Ill. 1997) .............................................15

**State Court of Appeals Cases**

*Joffe v. Acacia Mortgage Corp.*, 211 Ariz. 325, 121 P.3d 831
(Ariz. Ct. App. 2005) ......................................................................... 9, 10, 13, 15, 20, 21, 22-24, 25

*Rudgayzer & Gratt v. Enine, Inc.*, 4 Misc.3d 4, 779 N.Y.S.2d 882 (N.Y. App. Term 2004) .......18

**Other State Cases**

*CE Design, Ltd. v. Peripheral Solutions, Inc.*, No. 04 L 564 (Lake County, Ill. Mar. 8, 2005)....18

*Pollock v. Island Arbitration & Mediation, Inc.*, 869 N.Y.S.2d 740 (N.Y. City Ct. 2008)...........18

*Witting Corp. v. MSI Mktg., Inc.*, No. 02 CH 6332 (Cook County, Ill. Apr. 3, 2003) ..................18

**Federal Statutes, Rules, and Regulations**

Fed. R. Civ. P. 8(a)(2)..............................................................................................................2, 3

Fed. R. Civ. P. 12(b)(6)................................................................................................................3

47 U.S.C. § 227 *et seq.*..................................................................................................... *passim*

15 U.S.C. § 7712...........................................................................................................13, 14, 24

137 Cong. Rec. S18784 (1991) (statement of Sen. Hollins).....................................................8, 19

*In the Matter of Rules and Regulations Implementing the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003* ..........................................................................8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 19215, 2004 WL 2104233 (September 21, 2004)..............................................9

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014 (July 3, 2003) .................................................. 8, 17-18, 20

*Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559 (Dec. 28, 2007) .................................................................................................................................17

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 15927, 2004 WL 1794922 (August 12, 2004) ........................................................8-9, 28-29

**Miscellaneous**

Bryan A. Garner, *Guidelines for Drafting and Editing Court Rules,*
169 F.R.D. 176 (1997) .................................................................................................................6

Federal Trade Commission, http://www.ftc.gov/opa/2004/dnc.shtm (last visited September 17, 2009) .......................................................................................................................................22

Norman J. Singer, *Sutherland on Statutory Construction* § 47.33 (4th ed. 1985)...........................6

## I.  __INTRODUCTION__

An old axiom of litigation states that when the facts are against you, argue the law (and vice-versa).  When the facts and law are against you, argue loudly.  Defendant Selling Source is arguing loudly, because the facts and the law are against it.  Selling source has no good legal or factual argument against applying the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), to its sending of unsolicited text message calls to consumers throughout the nation.

Instead, Selling Source leads off its brief with an *ad hominem* diatribe against Plaintiffs' counsel (and more generally against class action suits under the TCPA), followed by a rote recitation of the losing arguments from the cases that have applied the TCPA to text message calls, and an argument against the constitutionality of the TCPA that has been uniformly rejected.  These arguments have been thoroughly examined and rejected by courts across the nation time and again, and they are no more persuasive in this case.

Selling Source's posturing is merely an attempt to hide from the plain facts alleged in the Complaint: Selling Source engaged in the mass placing of unsolicited text message calls to consumers throughout the country, it made such calls without consent of the consumers it called, and it made such calls using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.  These allegations sufficiently place Selling Source on notice of the claims against it, and satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

Selling Source's professed fears of a "flood of TCPA text message litigation in Chicago" should be of no concern to the Court.  If Selling Source wants to prevent such a flood, the TCPA provides it with convenient guidelines for how to conduct its business lawfully.  Denying consumers the protections of the federal statutes passed to protect them is not the solution.

1

## II.  **STATEMENT OF FACTS**

The relevant facts of this case are straightforward. On or about November 29, 2006, Plaintiff's cellular telephone rang, indicating that a text message was being received. (Compl. ¶ 13.) The text message read:

> U QUALIFY 4 UNSECURED EXPRESS GOLDMASTERCARD
> FOR $350 CREDIT LINE. ALL APPLICATIONS ACCEPTED.
> INSTANT APPROVAL. GO TO WWW.GOLDMC3.COM

(Compl. ¶ 15.) Although Plaintiff responded to this message by replying "Stop," Defendant continued to send, and Plaintiff continued to receive, multiple additional text message calls on his cell phone over the next several months. (Compl. ¶ 17.) This was no accident, nor was it an isolated incident. The text calls received by Plaintiff were part of a mass transmission of wireless spam by Defendant to the cell phones of thousands of individuals who were presumably considered potential customers for consumer loan products. (Compl. ¶ 12.)

The facts of the Complaint must be taken as true and construed in favor of Plaintiff for purposes of this Motion to Dismiss. *See Thompson v. Ill. Dep't of Prof'l Ref.*, 300 F.3d 750, 753 (7th Cir. 2002). Because it cannot dispute any of the facts, Defendant instead asserts in its Memorandum in Support of its Motion ("Memorandum") that its actions do not constitute a violation of the TCPA. Unfortunately for Defendant, absolutely no legal authority supports its position. On the contrary, the Ninth Circuit Court of Appeals (as well as the Arizona Court of Appeals), has addressed the specific issues raised by Defendant and has rejected them in no uncertain terms. Armed with a legal argument that flies in the face of relevant legal precedent, Defendant simply wants this Court to ignore those previous rulings. But the arguments provided by Defendant are utterly without merit and should be rejected for the same reasons that they were very recently rejected by the Ninth Circuit. The Motion to Dismiss should be denied.

## III.  **ARGUMENT**

### A.    **The Complaint Satisfies Federal Court Pleading Requirements.**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiff's Complaint need only contain a "short and plain statement of the claim showing that [he] is entitled to relief."

Defendant asserts that *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), have somehow radically altered Fed. R. Civ. P. 8(a)(2) and that, under this new authority, Plaintiff's allegations are insufficient. Defendant's arguments are unavailing. Under *Twombly*, a Plaintiff's allegation will not be dismissed under Rule 12(b)(6) if two minimum hurdles are cleared: (1) the Complaint must describe the claim in sufficient detail to give the Defendant fair notice of what the claim is and the grounds upon which it rests; and (2) the Complaint's allegations must plausibly suggest that the Plaintiff has a right to relief, raising the possibility above a speculative level. *Twombly*, 550 U.S. 544-55, 127 S. Ct. 1955 (2007).

Plaintiff's Complaint meets – and exceeds – this pleading standard. The Complaint provides sufficient factual context to give Defendant "fair notice" of the basis of the claim – including the recipient of the text message calls at issue, the specific wording of the text message calls, the date and time period of the text message calls, the number of potential messages sent, and the fact that the text message calls were sent to cellular phones. Any argument to the contrary is disingenuous.

The Complaint alleges that Defendant sent unsolicited text message calls "using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." (Compl. ¶ 25.) Defendant takes issue with the fact that Plaintiff alleged this element of the TCPA claim based "upon information and belief," asserting that courts are "loath to accept as true allegations such as this based solely on information and belief." (Motion at 9.) Defendant is attempting to convince this Court that *Twombly* and *Ashcroft* somehow abolished pleadings based upon information and belief. That is simply not true, and Defendant offers no basis for such a conclusion.[1] Defendant wants Plaintiff to allege specific factual details about specific pieces of

---

[1]     The cases cited by Defendant to suggest that it is now improper to plead facts on "information and belief" do not support its argument. In *Stonecrafters*, for example, the Court dismissed two claims (the TCPA claim was unchallenged), and neither on the basis that alleging class size on "information and belief" was improper. Instead, the court ruled that, assuming the class size to be pled in good faith, the damages would be insufficient to support a claim. *Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc,* No. 08C6992, 2009 WL 1957060, at

equipment not currently in Plaintiff's possession. Indeed, Defendant wants Plaintiff to prove his

entire case in the Complaint, which is not required under *Twombly* or *Ashcroft*. The Complaint's

allegations that Defendant utilized equipment with the capacity to store or produce telephone

numbers to be called using a random or sequential number generator are sufficient. Plaintiff

need not *prove* those allegations at this time.

Moreover, the Complaint contains other allegations that lend factual support for the

allegation regarding the capacity of Defendant's equipment. For example, Plaintiff specifically

alleges that Defendant caused "mass transmissions" of wireless spam (Compl. ¶12), that he

received multiple unsolicited messages from Defendant, and that over 1,000 other individuals

also received such unsolicited messages. (Compl. ¶¶13-19, 21.) In addition, Plaintiff alleges

that Defendant licensed and operated an SMS short code to effectuate its large numbers of text

---

*5 (N.D. Ill. July 8, 2009). Furthermore, the court did not state that pleading class size on
information and belief is "'precisely the sort of naked assertion devoid of further factual
development' condemned by the *Ashcroft* court," as claimed by Defendant. (Motion at 6.)
Rather, the court noted that the complaint contained conflicting statements about class size and
questioned whether the latter (and larger) class size allegation was such a "naked assertion."
*Stonecrafters,* 2009 WL 1957060, at *5 n.6.

The other two cases cited by Defendant are also unhelpful to its argument. In *Pena*, the court
found that the plaintiff could not allege a RICO "enterprise" based solely on a single
"information and belief" allegation, because a RICO "enterprise" is "an ongoing structure of
persons associated through time, joined in purpose, and organized in a manner amenable to
hierarchical or consensual decision-making" and the complaint contained none of those
allegations. *Pena v. Int'l Union of Op. Engineers, Local 150, AFL-CIO*, No. 08C6992, 2009 WL
2177239 at *3. (N.D. Ill. July 21, 2009). Similarly, in *Carpenters' Health and Welfare Fund of
Philadelphia v. Kia Ent. Inc.*, No. 09-116, 2009 WL 2152276 (E.D. Pa. July 15, 2009), the
failings of the complaint were not that allegations were made on "information and belief," but
that the entire allegation of "disparate treatment" was based on a single "information and belief"
statement that the cross-defendant treated minority owned and non-minority owned businesses
differently. *Id.* at *3. Additionally, both of these cases, like *Ashcroft*, involved questions of
conduct that was "not only compatible with, but more likely explained by," lawful behavior and
therefore did not "plausibly suggest" an unlawful agreement." *Id.* at *2. The underpinnings of
these cases – broad allegations about the conduct and motives of groups of people over
significant periods of time based on nothing but a single information and belief statement – are
markedly different than the single, narrow "information and belief" allegation here as to the
dialing capacity of the computer systems used by Defendant. And, as noted above, this
"information and belief" allegation is supported by numerous other allegations in the complaint
and reasonable inferences drawn from them.

message calls. (Compl. ¶14.)  In short, the allegations in the Complaint are more than sufficient under *Ashcroft* and *Twombly*.

Arguments similar to Defendant's have been rejected in this District.  In *Holtzman v. Caplice*, No. 07 C 7270, 2008 WL 2168762 (N.D. Ill. May 23, 2008), a TCPA case relating to unsolicited faxes, the defendant asserted that the plaintiff's allegations were "conclusory and insufficient under *Bell Atlantic*."  *Id*. at \*2.  The Court disagreed, stating as follows:

> The complaint alleges that the "TCPA prohibits the 'use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine. . . .' 47 U.S.C. § 227(b)(1)."  It also alleges that the defendant sent an unsolicited fact to the plaintiff's fax machine without the plaintiff's permission and attaches a copy of the allegedly offending fax. . . .  Thus, the complaint gives the defendant fair notice of what the claim is and the grounds upon which it rests and the allegations plausibly suggest that the plaintiff has a right to relief under the TCPA.

*Id*. at \*2.  As explained in *Holtzman*, the allegations in the instant Complaint exceed the minimum hurdles set forth under *Twombly*, providing more than adequate detail to put Defendant on fair notice of the bases for the claim alleged and plausibly suggesting that Plaintiff has a right to relief.  The Complaint is sufficient as matter of law.

### B.    The TCPA Does Not Require That A Plaintiff Be Charged For The Call.

Defendant's argument that Plaintiff never alleged the TCPA "element" relating to the recipient of a text call being charged for the call, (Motion at 7-8), is simply false.  It fails both because the Complaint specifically alleges that the recipients of Defendant's text message calls had to pay their cell phone service providers for the receipt of the wireless spam, (Compl. ¶ 2), and also because the TCPA does not require that a consumer be charged for the call.[2]

The plain language of the TCPA is clear: all automated telephone dialing system calls made without the prior express consent of the cellular telephone recipient are forbidden, without regard to whether the recipient incurs a charge for that receipt.  The only exception is if the

---

[2]    The defendant in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), made this very same argument relating to text message charges in its appellate briefs.  In that case, the Ninth Circuit did not even deem the argument worthy of discussion.

Federal Communications Commission ("FCC") explicitly exempts the call for some reason. One needs look no farther than the plain words of the statute. The TCPA provides in relevant part that it is illegal to make any call using an ATDS:

> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227 (b)(1)(A)(iii). Defendant, however, argues that the phrase, "for which the called party is charged for the call," applies to all four categories of calls that go before it, including calls to numbers "assigned to a ... cellular telephone service." That argument violates every tenet of statutory construction, including the doctrine of the last antecedent and the doctrine of interpreting disjunctives.

The "doctrine of last antecedent" states "that where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it." *O'Kane v. Apfel*, 224 F.3d 686, 690 (7th Cir. 2000) (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 832 (9th Cir.1996)); *see also* Norman J. Singer, *Sutherland on Statutory Construction* § 47.33 (4th ed. 1985) (stating that "qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."). The rule extends "generally to the placement of all modifiers next to the term to be modified." *Shelby County State Bank v. Van Diest Supply Co.,* 303 F.3d 832, 836 (7th Cir. 2002) (citing Bryan A. Garner, *Guidelines for Drafting and Editing Court Rules*, 169 F.R.D. 176, 195 (1997) ("To avoid ambiguity, place a modifier next to the word or phrase it modifies.")).

So, too, with the disjunctive "or" that precedes the phrase, "or any service for which the called party is charged for the call." The use of a disjunctive, particularly the disjunctive "or," indicates that "the phrases are alternatives and should be treated separately." *Squillacote v. U.S.*,

747 F.2d 432, 433 (7th Cir.1984) (citing *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975)).

These rules would be dispositive without even making reference to 47 U.S.C. § 227(b)(2)(C),

which provides:

> The Commission may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect.

If the TCPA applied only to calls for which the recipient was charged, as Defendant

contends, there would be no reason to have Section 227(b)(2)(C). There would be no reason for

the FCC to "exempt from the requirements" of the statute calls for which the recipient was not

charged if, as Defendant contends, the statute does not even *cover* calls for which the recipient is

not charged. Defendant urges a reading that simply cannot be squared with the plain words of

the statue, settled rules of statutory construction, or the rest of the statute. *See In re the Matter of*

*Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996) ("We examine the statute

according to the conventional rules of statutory construction…we accord words and phrases their

ordinary and natural meaning…we view words not in isolation but in the context of the terms

that surround them; we likewise construe statutes in the context of the entire statutory scheme

and avoid rendering statutory provisions ambiguous, extraneous, or redundant…and we avoid

construing statutes contrary to the clear intent of the statutory scheme.") And even if the

Defendant were right, payment has been alleged in the Complaint. (Compl. ¶¶ 2, 11.)

### C.    The TCPA Applies To Text Messages.

Defendant's argument as to the applicability of the TCPA to text message calls is merely

a re-hashing of arguments that have been consistently rejected by other state and federal courts.

Those arguments should be rejected again here.

1.   *The FCC has expressly stated that a text message is a "call" under the TCPA.*

Defendant does not cite to a single case, or other objective support, for its assertion that a text message call sent to an individual's cell phone does not constitute a "call" under the TCPA. On the contrary, Defendant acknowledges – as it must – that all relevant caselaw on this issue supports Plaintiff's position that a text message is a call under the TCPA. Although the TCPA does not define the word "call," the FCC has expressly found the TCPA to apply to text message calls, like the ones sent by Defendant to Plaintiff here. Although Defendant notes that text message calls were not available when the TCPA was passed in 1991, Congress was clearly cognizant that new technologies would continue to emerge, and Congress thus charged the FCC with rule-making authority under the TCPA. 47 U.S.C. § 227(b)(2); *see also* 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollins) ("[T]he FCC is not limited to considering existing technologies. The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies.")

Under its Congressionally-mandated rule-making authority, the FCC has issued declaratory rulings on the TCPA and the technologies to which it applies. In fact, the FCC has explicitly stated that the TCPA "encompasses both voice calls **and text calls** to wireless numbers including, for example, short message service (SMS) calls." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis added) ("2003 FCC Order"). Indeed, the FCC has subsequently confirmed – on multiple occasions – that the TCPA "applies to text messages:"

> And, as we explained in the NPRM and the previous Commission Order, the TCPA prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers **applies to text messages** (e.g. phone-to-phone SMS), as well as voice calls. We clarify here that this prohibition applies to all autodialed calls made to wireless numbers, including audio and visual services, **regardless of the format of the message**.

*In the Matter of Rules and Regulations Implementing the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003* (CAN-SPAM Act) (emphasis added)*; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd.

8

15927, 15931, 15933, 15944, 15957-58, 2004 WL 1794922, at **3-5 (August 12, 2004).[3]  Thus,

the regulatory body charged by Congress with implementing the TCPA has consistently stated

that the statute applies to both voice and text calls; this Court should as well.

> 2.      *Relevant state and federal court precedent holds that the TCPA applies to text message calls.*

In addition to the FCC's rulings, relevant caselaw also rejects Defendant's position.  Like

the Defendant here, the defendant in *Joffe v. Acacia Mortgage Corp.*, 211 Ariz. 325, 121 P.3d

831 (Ariz. Ct. App. 2005), *cert. denied*, 127 S. Ct. 934 (2007), argued that text calls lacked the

"characteristics of a traditional call" and fell outside the purview of the TCPA.  *Joffe,* 211 Ariz.

at 329, 121 P.3d at 835.  The *Joffe* court rejected those arguments:

> [A] call subject to § 227(b)(1)(A)(iii) of the TCPA occurs when the caller has made an attempt to communicate by telephone, even if the attempt does not present the potential for a two-way *voice* intercommunication.

*Id.* at 330, 121 P.3d at 836-37 (emphasis in original).  *Joffe* explained that a text message call

does fall within the ordinary meaning of the word "call" when associated with telephone use:

> Of course, call is also commonly associated with telephone use.  In that context, when the word call is used as a verb, one of its most common meanings is to communicate or try to communicate with by telephone.  *E.g.,* Webster's Third at 318 ("to communicate with or try to get into communication with a person by telephone.")

*Id.* at 329, 121 P.3d at 835.  *Joffe* concluded: "[G]iven that the TCPA was designed to regulate

the receipt of automated telephone calls, Congress used the word call to refer to an attempt to

communicate by telephone." *Id.* (citing *U.S. v. Amer. Trucking Assoc.*, 310 U.S. 534, 542-43, 60

S. Ct. 1059 (1940)) (when words of a statute are susceptible to more than one meaning, courts

---

[3]      *See also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 19215, 19218, 19224-25, 2004 WL 2104233, at **3, 10 (September 21, 2004).  In the Notice of Proposed Rulemaking of the CAN-SPAM Act, the FCC stated that:

> [T]he TCPA and Commission rules that specifically prohibit using automatic telephone dialing systems to call wireless numbers already apply to any type of call, including both voice **and text calls**.

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 15927, 15933, 2004 WL 1794922, at *4 (August 12, 2004) (emphasis added).

are to interpret them in a manner which is reasonable given the subject matter of the statute and its purpose.) As *Joffe* explained, "There is no language in the TCPA that restricts calls to only those that present the potential for a voice communication. The TCPA's provisions at issue here apply to <u>any</u> type of call, voice **or text**." *Joffe* at 331, 121 P.3d at 836 (emphasis added) ("It is the act of making a call, that is, of attempting to communicate to a cellular telephone number using certain equipment that the TCPA prohibits. Whether the call had the potential for a two-way real time voice communication is irrelevant.")

The *Joffe* court is not the only court to expressly rule on this issue. The Ninth Circuit Court of Appeals has also examined whether a text message is a call under the TCPA. In its recent June 19, 2009 opinion in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the Ninth Circuit ruled that "a text message is a 'call' within the meaning of the TCPA." *Id.* at 951-52. In reaching that conclusion, the Ninth Circuit considered the rules promulgated by the FCC, finding that the FCC had "explicitly stated" that the TCPA applies to text calls and that the FCC subsequently confirmed "that the 'prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages[.]'" *Id.* at 952 (internal citations omitted).

> 3.   *The FCC's rulings are dispositive on the issue of whether the TCPA applies to text message calls.*

The FCC's pronouncements on this issue are dispositive, and Defendant's arguments to the contrary are of no moment. While acknowledging that the FCC has ruled on this issue, Defendant asserts that the 2003 FCC Order in question "was not noticed for comment by the FCC, nor did the FCC receive comments on it." (Motion at 14.) Defendant does not reference any of the other FCC statements cited above. Instead, Defendant argues, the FCC's statement on the issue of text message calls was simply "off-hand" and entitled to no deference. (Motion at 14.) While this argument is certainly creative, it is also thoroughly unsupported and wrong. Defendant does not provide any support for its own "off-hand" comment about any lack of public notice, nor does Defendant provide any basis for this Court to find that the FCC's

10

unequivocal statement in the 2003 FCC Order was somehow meaningless. Defendant also makes this assertion without acknowledging the multiple times and instances in which the FCC reached the same conclusion. *See* Section III(C)(1), *supra*. Defendant flippantly dismisses the FCC's rulings on this issue and also glosses over the rulings of the other courts that have analyzed and affirmed the FCC's orders, including the *Satterfield* court and the *Joffe* court. In fact, Defendant completely ignores the *Joffe* court's analysis of this issue, even though it addresses and dismantles the same arguments Defendant makes here.

The fact that the FCC has ruled on this issue is not merely additional support for a finding that a text message is a call covered under the TCPA. Its interpretation is dispositive, as the FCC's interpretations of the TCPA are entitled to *Chevron* deference. Under *Chevron v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1987), and its progeny, FCC interpretations are entitled to broad deference. *Satterfield*, 569 F.3d at 952. The *Satterfield* court's *Chevron* analysis of the TCPA is instructive. In that case, the Ninth Circuit noted that an agency's interpretation of federal law is to be given "broad deference" if the agency's interpretation meets the test set out in *Chevron*. The Ninth Circuit found that "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA." *Id.* at 953 (citing 47 U.S.C. § 227(b)(2)). The Ninth Circuit noted that the FCC has specifically interpreted the TCPA to apply to text message calls, and stated that the FCC's interpretation "has the force of law" and is entitled to *Chevron* deference (1) if the term "call" is otherwise not defined by the TCPA and (2) if the FCC's interpretation is reasonable. *Id.* (citing *Chevron*, 467 U.S. at 843-44).

The Ninth Circuit then analyzed the two requirements for *Chevron* deference, noting for the first requirement that (1) the TCPA did not specifically speak to text messages in 1991, given that text message calls did not exist at the time, but (2) the "language and purpose of the TCPA support the conclusion" that the TCPA was meant to apply to *any* call, regardless of whether that call is made by voice or text. *Satterfield*, 569 F.3d at 953-54. For the second *Chevron* requirement, the Ninth Circuit found that the FCC's interpretation of the term "call" was reasonable, stating:

> The FCC's interpretation of 47 U.S.C. § 227(b)(1)(A) is consistent with the dictionary's definition of call in that it is defined as "to communicate with or try to get into communication with a person by telephone." It is undisputed that text messaging is a form of communication used primarily between telephones. The FCC's interpretation is also consistent with the purpose of the TCPA – to protect the privacy interests of telephone subscribers. Further, nothing in the record indicates that such an interpretation is "arbitrary, capricious, or manifestly contrary to the statute." Accordingly, we find that the FCC's interpretation of the TCPA is reasonable, and therefore afford it deference to hold that a text message is a "call" within the TCPA.

*Id.* at 954. Defendant asserts nothing to contradict the Ninth Circuit's detailed FCC-deference analysis. In fact, Defendant's primary argument – that the FCC's interpretation was "informal" and not noticed for comment – was also raised by the defendant in *Sattefield* and was rejected by the Ninth Circuit:

> While *Chevron* only considered formal notice-and-comment rulemaking, the Supreme Court in *United States v. Mead Corp.*, 533 U.S. 218 (2001), clarified that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. . . . Those administrative decisions not meeting these standards may still be given deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

Id. at 952-53. Thus, even putting aside the fact that Defendant provides no basis for finding that the FCC's interpretation was improper or was somehow just an "off hand" comment, and even putting aside the fact that the FCC has ruled on this issue on multiple separate occasions, whether the FCC's 2003 Order was noticed for public comment is irrelevant here. As the Ninth Circuit found in interpreting Supreme Court precedent, *Chevron* deference does not require formal notice-and-comment rulemaking, and the FCC's interpretation of the TCPA's meaning of "call" is entitled to full *Chevron* deference.[4] *Id.*

4. *Defendant's reference to other statutes is legally irrelevant.*

Defendant's final argument against applying the TCPA to text message calls is that other federal statutes reveal that Congress did not intend to have the TCPA apply to text message calls.

---

[4] Even if this Court does not give *Chevron* deference in this case, the Court should still give deference to the FCC's interpretations and rulings on the TCPA.

Defendant's arguments lack merit and should be disregarded.[5] Defendant references the

Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-

SPAM Act"). However, *Joffe* addressed this very same argument and concluded that the passage

of the CAN-SPAM Act in no way affects the application of the TCPA to text message calls. The

*Joffe* court's findings on this issue were quite specific and are instructive here:

> Congress contemplated the CAN-SPAM Act and the TCPA could have dual
> applicability. Section 14(a) [of the CAN-SPAM Act] specifically states
> "[n]othing in this Act shall be interpreted to preclude or override the applicability
> of [the TCPA]. . . ." 15 U.S.C. § 7712(a).

*Joffe* at 334, 121 P.3d at 840. Defendant asserts that the legislative history of the CAN-SPAM

Act demonstrates that some members of Congress believed that the CAN-SPAM Act was

creating a new cause of action relating to text message calls and, thus, that the TCPA may not

have been meant to apply to text messages. (Motion at 16.) The *Joffe* court also shut down this

assertion, finding that "although certain members of Congress may have thought that the CAN-

SPAM Act was the first legislation to attack unwanted text messages sent to wireless devices,

their perceptions, stated years after the passage of the TCPA, fail to demonstrate that the TCPA

was inapplicable [to text message calls]. None of them mentioned the TCPA and none of them

expressed any opinion about its applicability to text messages." *Joffe*, 211 Ariz. at 334, 121 P.3d

at 840. The *Joffe* court further explained:

> As the Supreme Court has repeatedly instructed, "the views of a subsequent
> Congress form a hazardous basis for inferring the intent of an earlier one. This is
> especially true when the subsequent legislative history consists of statements
> made by individual legislators as to what they believe the prior legislation meant.
> 
> \*     \*     \*
> 
> [E]ven when it would otherwise be useful, subsequent legislative history will
> rarely override a reasonable interpretation of a statute that can be gleaned from its
> language and legislative history prior to its enactment.
> 
> \*     \*     \*
> 
> This holds true even when a later Congress passes legislation to address actions it
> believes fall outside the scope of earlier legislation.

---

[5]     It is ironic that Defendant seeks refuge from the consequences of its conduct in federal
statutes and bills that re-affirm Congress' intent to curb mass, unsolicited invasions of privacy
and that would further confirm the illegality of Defendant's actions.

*Id.* (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n. 13 (1980)); *see also U.S. v. Price*, 361 U.S. 304, 313, 80 S. Ct. 326, 332 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.")

Defendant attempts to distinguish the *Joffe* court's analysis by saying that *Joffe* failed to consider the legislative history comments from two particular members of Congress that also voted on the TCPA back in 1991. However, the relevancy of the views of two Congressmen on a different bill passed 12 years <u>after</u> the TCPA is questionable at best. Defendant is asking this Court to infer that, because these two individual Congressmen opined on a bill that did not in any way affect the TCPA, that somehow the original purpose of the TCPA should be altered. There is no basis for this. *See Russello v. U.S.*, 464 U.S. 16, 25-26, 104 S. Ct. 296, 302 (1983) (rejecting reliance on subsequent proposed legislation for interpretation of statute); *Kitson v. Bank of Edwardsville*, No. 06-528-GPM, 2006 WL 3392752, at *10 (S.D. Ill. Nov. 22, 2006) ("As the leading treatise on statutory interpretation explains, 'Post-enactment views of those involved with [the enactment of a statute] should not be considered when interpreting the statute.... While contemporaneous sponsor statements are frequently used as extrinsic aids to legislative intent, post enactment statements of legislators on legislative intent have been disapproved. They are of limited legal value to an understanding [of] the clear meaning and legal effect of statutes.'" (citation omitted).

The CAN-SPAM Act is irrelevant here. It did not overrule the TCPA, nor did it even amend the TCPA. Indeed, Congress itself stated that the CAN-SPAM Act should not be "interpreted to preclude or override the applicability of [the TCPA]...." 15 U.S.C. § 7712(a). Defendant does not present any comments from the two Congressmen discussing the TCPA in any way. And even if the CAN-SPAM Act did address certain matters that were also addressed in the TCPA, that certainly does not affect the application of the TCPA to this case.[6] Congress

---

[6]    The CAN-SPAM Act, if anything, demonstrates the longstanding Congressional intent to prohibit unsolicited spam text message calls of the type peddled by Defendant. The CAN-SPAM Act does not amend the TCPA, nor is it incongruent with the TCPA in any way.

was certainly entitled to pass legislation that clarified, expanded on, or even overlapped with prior legislation without that prior legislation somehow becoming void. In fact, it is common for wrongful activity to be considered a violation of multiple statutes, and the fact that Defendant's actions could be illegal under multiple statutes is of no benefit to Defendant here. *See, e.g., Joffe*, 211 Ariz. at 334, 121 P.3d at 840 ("Congress contemplated that the CAN-SPAM Act and the TCPA could have dual applicability.")

Defendant's reference to the m-Spam Act of 2009 is both irrelevant and illogical. The m-Spam Act is not a law. It is simply <u>proposed</u> legislation like thousands of other pieces of proposed legislation. It is simply not relevant to the discussion of what the TCPA says and what Congress intended the TCPA to say back in 1991. *See Davis v. U.S.*, 569 F. Supp. 2d 91, 98 (D.D.C. 2008) (stating that judicial notice of pending legislation is improper because such legislation is not the law of the land and is irrelevant); *United Stationers, Inc. v. U.S.*, 982 F. Supp. 1279, 1283 (N.D. Ill. 1997) (noting that a proposed regulation "carries no more weight than a position espoused in a brief."). Defendant's arguments should be rejected.

**D.      The TCPA Should Apply To The Instant Case.**

Defendant argues that Section 227(b)(1)(A)(iii) of the TCPA requires that, in order to have violated the TCPA, Defendant must have "actually used" a random or sequential number generator in sending the text messages at issue here. Defendant is incorrect and its attempt to re-write the TCPA should be rejected.

Section 227(b)(1)(A)(iii) of the TCPA makes it illegal for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines automated telephone dialing system ("ATDS") to mean "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 U.S.C. § 227(a)(1). Defendant attempts to read the word "capacity" out of the definition, arguing that the "[u]se of equipment that merely has the capacity to randomly or

15

sequentially dial, however, without actual use of that function, does not give rise to liability under Section 227(b)(1)(A)(iii)." (Motion at 17.) While ignoring the statute's definition of ATDS would no doubt be desirable for Defendant, it would contradict the plain text of the statute. There is no legal or logical basis for doing so.

In *Satterfield*, the Ninth Circuit addressed the question of whether the TCPA requires that a defendant's equipment actually *uses* a random or sequential number generator, or whether it violates the TCPA if the equipment merely had the *capacity* to store or produce telephone numbers to be called using a random or sequential number generator. The Ninth Circuit's reasoning is clear and is directly on point here:

> In construing the provisions of a statute, we first look to the language of the statute to determine whether it has a plain meaning. "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous. Reviewing this statute, we conclude that the statutory text is clear and unambiguous.
>
> *        *        *
>
> When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

*Satterfield*, 569 F.3d at 951 (emphasis in original). Defendant asks this Court to apply the same interpretation of the TCPA that was considered and rejected by the Ninth Circuit in *Satterfield*. Defendant is asking this Court to read the word "capacity" out of the statutory language, which it cannot do. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 449 (2001) ("It is a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (internal citation omitted); *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004) ("We must read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous.")

As the Ninth Circuit explained, the plain language of the statute is clear and unambiguous. The plain language of the TCPA, as well as the FCC rulings and the Ninth Circuit's *Satterfield* opinion, all militate strongly against Defendant's baseless interpretation. The Complaint alleges precisely what is written in the statute, namely that Defendant used equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator. It is Defendant's interpretation, not Plaintiff's, that does violence to the clear language of the TCPA and which should, accordingly, be rejected.

Despite Defendant's efforts to re-write the TCPA to eliminate the word "capacity," the definition of automatic telephone dialing system contained in Section 227 is reasonable and logical in light of the Congressional purpose behind the TCPA. As discussed above, Congress was cognizant that new technologies would continue to emerge, and consequently charged the FCC with rule-making authority under the TCPA. 47 U.S.C. § 227(b)(2). Under its rule-making authority, the FCC has issued declaratory rulings interpreting the definition of ATDS, which encompasses the term "capacity," and indicating what type of devices have the requisite ability.[7] *Hicks v. Client Services, Inc.*, No. 07-61822-CIV, 2008 WL 547911, at *4 (S.D. Fla. Dec. 11, 2008) (discussing FCC interpretations of an ATDS and suggesting that the FCC has interpreted the definition of ATDS to include any type of equipment that has the "capacity to dial numbers without human intervention.") The FCC has ruled as follows:

> The statutory definition contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an "automatic telephone dialing system," the equipment need only have the "*capacity*" to store or produce telephone numbers. (emphasis added)...."

2003 FCC Order at 14091-92 (italics and ellipses in original). The FCC has further stated:

> It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. As one commentator points out, the evolution of the teleservices industry has

---

[7]     Two such rulings are the 2003 FCC Order, discussed *supra*, and *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 566 (Dec. 28, 2007).

> progressed to the point where using lists of numbers is far more cost effective. <u>The basic function of such equipment</u>, however, <u>has not changed – the capacity to dial numbers without human intervention.</u>   We fully expect automated dialing technology to continue to develop.

*Id.* at 14091-92 (emphasis added).   The FCC concluded that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on <u>autodialed calls</u> not be circumvented." *Id.* at 14092-93 (emphasis added). The FCC's interpretations of the TCPA are based on the specific wording of the statute and are entitled to *Chevron* deference.[8]

### E.      The TCPA As Applied Does Not Violate the First Amendment.

Defendant argues that the TCPA, as applied in this case, would violate the First Amendment.   This argument has been offered by TCPA defendants for years and has been rejected every single time.   As recently set forth in this District:

> The defendant argues that the TCPA violated the First Amendment on freedom of speech grounds.   Before we begin our analysis, we note that many federal and state courts have heard this particular constitutional challenge, including this one, and found the TCPA's restriction of commercial speech to be a permissible one. *See Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003); *Destination Ventures v. FCC*, 46 F.3d 54, 57 (9th Cir. 1995); *Minnesota v. Sunbelt Communs. & Mktg.*, 282 F. Supp. 2d 976 (D. Minn. 202); *Witting Corp. v. MSI Mktg., Inc.*, No. 02 CH 6332 (Cook County, Ill. Apr. 3, 2003); *CE Design, Ltd. v. Peripheral Solutions, Inc.*, No. 04 L 564 (Lake County, Ill. Mar. 8, 2005); *Rudgayzer & Gratt v. Enine, Inc.*, 4 Misc.3d 4, 779 N.Y.S.2d 882 (N.Y. App. Term 2004).

*Italia Foods, Inc. v. Marinov Enterprises, Inc.*, No. 07 C 2494, 2007 WL 4117626, at *2 (N.D. Ill. Nov. 16, 2007).   After listing just a few of the litany of cases upholding the constitutionality of the TCPA, the court ruled similarly.   Likewise, in *Phillips Randolph Enterprises, LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007), and in *Holtzman v. Caplice*, No. 07 C 7279, 2008 WL 2168762 (N.D. Ill. May 23, 2008), judges of this District upheld the

---

[8]      Defendant cites to *Pollock v. Island Arbitration & Mediation, Inc.*, 869 N.Y.S.2d 740 (N.Y. City Ct. 2008), as support for its strained interpretation of the TCPA.   But the *Pollock* court based its TCPA interpretation squarely on the district court interpretation in *Satterfield* – an interpretation that was expressly reversed by the Ninth Circuit's *Satterfield* opinion.

constitutionality of the TCPA.

In each situation in which courts have upheld the constitutionality of the TCPA, the court analyzed the factors set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557 (1980), concluding that the statute directly advances a substantial governmental interest, that the statute is narrowly tailored, and that the statute allows for additional alternative channels of communication. Defendant's argument here is no different than the failed arguments tried by other spam marketer defendants in the past, only Defendant now argues that the TCPA is unconstitutional as applied to text message calls. Defendant's arguments lack merit.[9]

 1. *The TCPA, as applied here, would directly advance a substantial government interest in minimizing the invasion of privacy caused by mass, unsolicited text message calls.*

Defendant's primary argument is that the government has never articulated any interest in support of applying the TCPA to text message calls and that there is no interest in such an application. As Defendant concedes, the TCPA was enacted in 1991 when text message calls did not yet exist. Under Defendant's logic, the TCPA could never constitutionally apply to any technology other than the technology that existed in 1991. This myopic position has been rejected by courts, the FCC, and Congress itself. In fact, as previously discussed, Congress charged the FCC with rule-making authority under the TCPA precisely because Congress was cognizant that new technologies would continue to emerge. *See* 47 U.S.C. § 227(b)(2); *see also* 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollins) ("[T]he FCC is not limited to considering existing technologies. The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies.") The FCC concluded that the TCPA applies to text message calls and that "[i]t is clear from the statutory language and the

---

[9] When determining the constitutionality of a statute, the Court should begin its analysis with the black letter rule that "federal statutes enjoy a strong presumption of constitutionality." *In re the Search of the Office of Ken Tylman*, 245 F.3d 978, 981 (7th Cir. 2001); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. U.S.*, 367 F.3d 650, 654 (7th Cir. 2004) ("When 'it is fairly possible[,]' [the] Court is 'to interpret the statute in a manner that renders it constitutionally valid.'") (citations omitted).

legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies." 2003 FCC Order at 14092.

In the only case specifically addressing the constitutionality of applying the TCPA to text message calls, the *Joffe* court rejected the constitutional challenge that was substantially similar to the argument articulated by Defendant here. The *Joffe* court noted that Congress intended to apply the TCPA to advances in technology and intended to apply the TCPA "to the use of that technology to disrupt the privacy of residential (and business) telephone subscribers." *Joffe*, 211 Ariz. at 336, 121 P.3d at 842. Defendant takes issue with the *Joffe* court's reasoning, stating only that the *Joffe* court somehow had no basis for finding that that Congress intended for the TCPA to apply to evolving technology. In addition to being wrong, Defendant mischaracterizes *Joffe*'s analysis, ignoring the fact that the *Joffe* court reached its conclusion upon reviewing the TCPA's statutory language, legislative history, and FCC rulings. *Joffe*, 211 Ariz. at 333, 121 P.3d at 839. Of course, as discussed above, Defendant also ignores the relevant FCC rulings and the Ninth Circuit's ruling in *Satterfield*, which states that the "language and purpose of the TCPA support the conclusion" that the TCPA applies to text message calls. *Satterfield*, 569 F.3f at 954.

The *Joffe* court found that the TCPA applies to text message calls and that the significant governmental interest in "[p]rotecting the privacy of the home from unwarranted and unrequested intrusions" applied equally to text message calls. *Joffe*, 211 Ariz. at 336, 121 P.3d at 842. The Ninth Circuit reached the same conclusion in *Satterfield*, concluding that "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954.[10] Defendant chose to ignore the Ninth Circuit's conclusion,

---

[10] Defendant cites to *Horina v. City of Granite City, Illinois*, 538 F.3d 624 (7th Cir. 2008), for the proposition that the government must actually articulate a substantial government interest. Unlike in *Horina*, there is no dispute that the substantial government interest at issue here was articulated prior to the TCPA's passage back in 1991. Defendant incorrectly asserts that Congress needed to have specifically articulated its interest in curbing text message calls at that time. Congress articulated its substantial interest in preventing invasions of privacy caused by unsolicited calls using an ATDS; the form those calls take is a secondary concern. The FCC –

presumably because it refutes Defendant's argument.[11]

Defendant instead takes issue with the *Joffe* court's "privacy of the home" analysis, arguing that the ubiquity of cell phones in today's society demonstrates that they are different from land-line phones and that there is a decreased expectation of privacy. Defendant's argument defies common sense and lacks legal merit. First, the TCPA specifically applies to cell phones. 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 2003 FCC Order at 14037-39. Additionally, the fact that cell phones are ubiquitous does not render them significantly different from land-line phones, which are also ubiquitous. In fact, the *Joffe* court explained that cell phones have even replaced land-line phones in many homes and businesses. *Joffe*, 211 Ariz. 325, 336, 121 P.3d 831, 842. Indeed, many people use cell phones as their primary, if not exclusive, source of communication. And even if an individual uses a land-line phone, that individual often has his or her cell phone on while at home or at work. In such a situation, a cell phone call is just as invasive as a land-line call. *See Van Bergen v. State of Minnesota*, 59 F.3d 1541, 1554 (8th Cir. 1995) (upholding constitutionality of state statute designed to curb mass marketing calls, finding that protecting an individual's privacy at home and at work is a substantial government interest.) Thus, the TCPA's governmental interest in preventing invasions of privacy applies at least as much to calls received by cell phones as it does to calls received by land-line phones. The *Joffe* court recognized this, as did the Ninth Circuit.

---

with its Congressionally-mandated rulemaking authority – determined that a text message call is a "call" under the TCPA. Because text message calls are "calls" under the TCPA, the substantial government interest in prohibiting certain unsolicited calls was already adequately articulated in 1991. The substantial government interest advanced by the TCPA has been consistently accepted by courts, and as stated by the Ninth Circuit, "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954.

[11]   This case is distinguishable from *Lockridge v. Village of Alsip, Illinois*, No. 03 CV 6720, 2005 WL 946880 (N.D. Ill. Apr. 18, 2005). In that case, this Court found that the government had made no previous statements or findings as to a substantial interest in enacting the sign restrictions at issue. *Id.* at *3. This Court then stated that a "latter-day statement by a single official is not authoritative to establish a statutory purpose." *Id.* Unlike *Lockridge*, the interest in preventing invasions of privacy was previously articulated and has always been considered adequate. The application of the TCPA to text message calls, as articulated by the FCC, means that the substantial government interest of the TCPA also applies to text messages.

Defendant stated that the *Joffe* court "turned logic on its head" by finding that the ubiquity of cell phones made unwanted text message calls a particularly potent invasion of privacy. Defendant is simply wrong to assert that, because people use their cell phones in public, they necessarily have a decreased expectation of privacy. Cell phone numbers are universally unlisted in phone directories, increasing their privacy. And the receipt of an unwanted and unsolicited text message call is made all the more intrusive by the fact that an individual could receive that text message call at home, while driving, in the office, on vacation, or at any time. Receiving an unsolicited spam call, either by voice or text, is an invasion of privacy. It is a significant invasion or privacy if the call is received at home, and such a fact applies to both land-line and cell phone calls. *See* Federal Trade Commission, http://www.ftc.gov/opa/2004/dnc.shtm (last visited September 17, 2009) (reminding consumers that "the National Do Not Call Registry has accepted personal cell phone and home phone number registrations since it opened for consumer registrations in June 2003.") Cell phone use outside the home and office actually exacerbates the potential invasion of privacy, as individuals can be harassed or annoyed in different locations throughout the day. Preventing such invasions of privacy was the stated intent of the TCPA – an intent that is well-documented and which has overcome all previous constitutional challenges.

Privacy expectations relating to cell phone use need not be *more* substantial or even *as* substantial as those relating to land-line phones for the governmental interests at issue here to be substantial for purposes of the constitutionality of the TCPA. *Central Hudson* only requires that there be a substantial governmental interest in the statute/regulation at issue. Multiple state and federal courts have ruled that the governmental interest in personal privacy and the avoidance of unwanted calls and faxes is substantial for purposes of the First Amendment. *See, e.g.*, *Bland v. Fessler*, 88 F.3d 729, 734-35 (9th Cir. 1996). The only question, therefore, is whether the governmental interest in prohibiting mass, unsolicited text calls is also substantial. The Ninth Circuit noted that a text message call is as much an invasion of privacy as a voice message. *Satterfield*, 569 F.3d at 954. And the *Joffe* court ruled that the TCPA – specifically as it applies

22

to text message calls – helps protect an individual's privacy from "unwarranted and unrequested intrusions" and "serves a significant governmental interest." *Joffe*, 211 Ariz. 325, 336, 121 P.3d 831, 842. Defendant offers no reason for this Court to find differently.[12]

2. *The TCPA, as applied, is narrowly tailored to serve the substantial government interest.*

Defendant argues that, even if there were a substantial governmental interest at issue here, the TCPA would not be "narrowly tailored to advance the interest." (Motion at 23.) Importantly, Defendant ignores the standard for the "narrowly tailored" prong of the *Central Hudson* test, as set forth and analyzed in *Joffe*:

> In the realm of content-neutral speech restrictions, a statute is narrowly tailored "so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." "So long as the means chosen are not substantially broader than necessary to achieve the government's interest … the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restricted alternative."

*Joffe*, 211 Ariz. at 336, 121 P.3d at 842 (internal citations omitted); *see also Phillips Randolph Enterprises*, 2007 WL 129052, at *4 ("[T]he Supreme Court has made clear that *Central Hudson* does not require a legislature to choose the least restrictive means available[.]"); *Holtzman*, 2008 WL 2168762, at *5 (quoting the Supreme Court and stating that all that is necessary is a reasonably "fit" between the legislature's ends and the means chosen to accomplish those ends, "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but…a means narrowly tailored to achieve the desired objective.") (internal quotations omitted). The *Joffe* court then applied that standard to the

---

[12]    Despite what Defendant says, a text message call results in a notification to the cell phone owner, usually in the form of audible beeping, vibrations, and/or flashing lights. While the cell phone owner may have the option to read the text message later, his or her privacy is still invaded by being physically informed of the existence of the message. Indeed, under Defendant's theory, Congressional intent to prevent an unsolicited phone call to a home land-line phone would not be a "substantial" interest because an individual could just ignore the call and/or let it go to voicemail or an answering machine.

TCPA's limited prohibition on mass unsolicited text message calls, concluding:

> [T]he TCPA is narrowly tailored to serve the governmental interest identified by Congress.... Through the TCPA, Congress sought to address consumer concerns about telephone solicitations, and in particular, automated calls that burden consumers. By prohibiting only those calls from automatic dialing systems, Congress narrowly tailored the TCPA to achieve this goal in a way not substantially broader than necessary.

*Joffe*, 211 Ariz. at 336, 121 P.3d at 842.

Defendant offers multiple reasons for its conclusion that the TCPA's application in this case is not narrowly tailored, none with any substantive analysis, and none with any merit. The first reason presented by Defendant is that the government has never articulated "why the CAN-SPAM Act's application to text messages . . . is not sufficient to achieve any articulated interest[.]" (Motion at 23-24.) This argument is preposterous. The existence of the CAN-SPAM Act has nothing to do with whether the TCPA's prohibition on certain text message calls is narrowly tailored for purposes of the First Amendment. The governmental interest in curbing mass, unsolicited invasions of privacy is not affected by a different statute that may have similar purposes. Having multiple statutes relating to similar subject matter does not render either statute unconstitutionally overbroad, particularly as in this case when Congress stated that the latter statute was not meant to affect the application of the prior statute. 15 U.S.C. § 7712(a); *Joffe* at 334, 121 P.3d at 840.

The second reason offered by Defendant is that the TCPA, as applied to the facts in this case, would be overbroad because it would be applied to situations in which there would be "no reasonable expectation of privacy." (Motion at 24.) Defendant's argument is that an individual has a diminished expectation of privacy when using a cell phone on a train, at a restaurant, or at any other public place. As discussed in Section III(D)(1), *supra*, Defendant's argument misses the point about the invasion of privacy that Congress was attempting to limit with its passage of the TCPA. Text message calls received on a cell phone invade the right to privacy in the home, at the office, and at any other place where an expectation of privacy would be reasonable. The diminished expectation of privacy mentioned by Defendant may apply to the substance of a

conversation (i.e. it's hard to have a private conversation on a train), but it does not lessen an individual's interest in not wanting to be bothered by unsolicited mass text message calls while watching a child's soccer game, on the golf course, or eating at a restaurant. The invasion of privacy is in no way diminished simply because people use cell phones in public places.

The third reason set forth by Defendant is that Section 227(b)(1)(A)(iii) would apply "regardless of whether a text message was commercial or non-commercial." (Motion at 24.) This argument is flawed. The Court can, and should, reject Defendant's constitutional challenge without even reaching the issue of non-commercial text message calls, as Defendant's argument – if it had merit – would also invalidate the TCPA's application to voice calls and faxes which has been uniformly upheld for the past 18 years. Additionally, it is difficult to imagine a situation where non-commercial text message calls would constitute a violation of the TCPA. The TCPA prohibits the transmission of text message calls, without prior consent, using equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator. Most personal text message calls would not fit into this definition, as non-commercial text message calls are more likely to be given with prior consent and are significantly less likely to be generated using equipment with the capacity to store or produce telephone numbers to be called using a random or sequential number generator. Accordingly, applying the TCPA to the facts of this case would be narrowly tailored to effectuate Congress' intent to reduce invasions of privacy caused by the transmission of mass, unsolicited spam calls.

        3.      *Application of the TCPA in this case would leave ample alternative channels of communication.*

Defendant's third argument on this point is that application of the TCPA to the facts of this case would fail to leave "ample alternative channels of communication." (Motion at 24.) This argument has failed in other TCPA cases and fails again now. The *Joffe* court addressed this issue, concluding:

> Congress left open many alternative methods of communication with consumers. For example, the TCPA restricts only calls using automatic telephone dialing

25

> systems or a prerecorded voice. Thus, [defendant] could have sent its messages
> by entering the numbers it wished to reach by hand. Other examples include live
> solicitation calls, and auto-dialed calls consumers consent to receiving.

*Joffe*, 211 Ariz. 325, 336, 121 P.3d 831, 840. Application of the TCPA in this case is no broader

and no more restrictive than the application of the TCPA to voice calls or faxes. As with voice

calls, the TCPA allows text message calls to be sent in large quantities provided that the sender

have consent to do so, or the sender not use equipment that has the capacity to store or produce

telephone numbers to be called using a random or sequential number generator. There are ample

alternative marketing channels available (e.g, emails, internet, handbills, radio, magazines,

television, etc.), and Defendant could always seek the consent of the consumer.

Likewise, other courts have rejected Defendant's argument in the context of the TCPA's

prohibition on unsolicited faxes. In *Missouri v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir.

2003), the Eighth Circuit Court of Appeals upheld the constitutionality of the TCPA as it applies

to unsolicited faxes. The Eighth Circuit rejected the defendant's "overbreadth" argument, and

the reasoning is instructive here:

> Advertisers remain free to publicize their products through any legal means; they
> simply cannot do so through an unsolicited fax. TCPA does not act as a total ban
> on fax advertising. Advertisers may obtain consent for their faxes through such
> means as telephone solicitation, direct mailing, and interaction with customers in
> their shops.

*Id.* at 659. The Eighth Circuit's reasoning was adopted in a recent TCPA spam fax case in this

District, *Holtzman v. Caplice*, in which the court found that placing the burden on the senders of

unsolicited faxes to obtain consent before sending faxes was a reasonable restriction that passed

constitutional muster. *Holtzman*, 2008 WL 2168762, at *6. In *Italia Foods*, another recent

TCPA spam fax case from this District, the court upheld the constitutionality of the TCPA,

noting that "Congress is not required to choose the least restrictive means, merely those that are

'in proportion to the interest served.'" *Italia Foods*, 2007 WL 4117626, at *3 (citations omitted).

The Court rejected the defendant's argument that the TCPA's restriction on unsolicited faxes

was more restrictive than necessary, finding that the TCPA allowed for reasonable alternatives

because senders of unsolicited commercial faxes would remain free to obtain consent from

26

consumers. *Id.* Under the analysis in *Italia Foods*, the ability to send text message calls upon obtaining consent from consumers is, by itself, a constitutionally sufficient alternative.

In enacting the TCPA, Congress did not ban commercial voice calls, faxes or text message calls. It simply established a reasonable restriction on mass commercial faxes, calls, and texts sent without consent using a certain type of equipment. Defendant no doubt wants to take advantage of the efficiency and low cost of text message calls; however, the fact that alternative channels are not Defendant's "first or best choice," or that the alternative channels do not provide "the same audience or impact" of Defendant's mass, unsolicited text message calls, do not render the statute unconstitutional. *See Horina*, 558 F.3d at 635 (cited by Defendant). Even if Defendant refuses to avail itself of other more channels for marketing, Defendant can still send the same text message calls to the same people, so long as it obtains consent or does not use an ATDS.[13] These alternatives are certainly adequate for constitutional purposes.

Defendant's reference to President Obama's campaign cannot be taken seriously, and again Defendant asserts factual hypotheticals that are not before this Court. The instant case deals solely with the constitutionality of applying the TCPA to the unsolicited, mass commercial text message calls sent by Defendant, and the Court need not – and should not – base its decision on the potential ramifications on political campaigns. President Obama's use of text message calls was not illegal (nor would it be under a ruling by this Court in favor of Plaintiff) because those text message calls were consensual. In stark contrast to this case, millions of people **asked**

---

[13]    Defendant's reference to *Horina v, City of Granite City, Illinois* is unavailing. In that case, the message being distributed by the handbills was religious in nature, whereas here it is entirely commercial. This distinction is important, because the defendant in that case would not have been able to efficiently and directly spread his message via other more traditional channels, such as radio, magazines, or even person-to-person contact. *Horina*, 538 F.3d at 636. Here, however, Defendant can utilize other more traditional methods of marketing. Additionally, unlike the defendant in *Horina*, Defendant has the option of sending the same text message calls without using an ATDS. And most importantly, Defendant can send the exact same text message calls to the exact same people using the exact same equipment - provided only that it first obtain their consent. That option (which is, essentially an identical channel of communication requiring an additional step), was not available in the handbill scenario at issue in *Horina*.

to receive texts sent by the Obama campaign, and therefore <u>consented</u> to such receipt. If anything, the President Obama example demonstrates that, as with faxes and voice calls, obtaining consent is a reasonable alternative channel of communication available to Defendant.

4.     *The TCPA as applied is not unconstitutionally vague.*

Defendant's final constitutional argument is that Defendant did not have "fair notice" of the fact that the TCPA applies to text message calls. This argument is disingenuous, as Defendant had ample warning of such application from the FCC's multiple 2003 and 2004 orders, as well as the *Joffe* decision, prior to its 2006 advertising campaign.

A statute or regulation will not be considered unconstitutionally vague if a person of "common intelligence," utilizing extrinsic knowledge – including statutory construction adopted by a court or enforcement agency, generalized and specialized knowledge of words, and knowledge of legislative history – would not have to guess at its meaning. *See Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications*, 329 F. Supp. 2d 789, 804 (M.D. La. 2004). The test in this case is whether a person of "common intelligence," presumed to be familiar with court rulings, legislative history, and regulatory agency determinations, could have known that Defendant's actions were potentially illegal when those actions were taken. *See U.S. v. Southern Indiana Gas & Elec. Co.*, 245 F. Supp. 2d 994, 1013 (S.D. Ind. 2003) (stating that a primary issue for fair notice requirements is whether the defendant had notice "when it was contemplating and implementing its projects.") The application of the TCPA to Defendant's actions here easily passes that test. Defendant does not even argue that it legitimately (and in good faith) did not believe that the TCPA applied to its actions here.

The text message calls at issue in this litigation were first sent in late November 2006. The FCC's rulings relating to the application of the TCPA to text message calls were made as early as 2003 – several years before Defendant sent its unsolicited text message calls in this case. *See* Section III(C), *supra*. The FCC did not make just one statement about text messages; it made several rulings in 2003 and 2004, including its explicit statement on August 12, 2004 that "the TCPA and Commission rules that specifically prohibit using automatic telephone dialing

28

systems to call wireless numbers already apply to any type of call, including both voice and text calls." *Rules and Regulations Implementing the Telephone Consumer Protections Act of 1991*, 19 FCC Rcd. 15927, 15933 (August 12, 2004). These rulings are important not only because they were made public, but because Congress gave the FCC rulemaking authority under the TCPA, and Defendant knows, or should have known that.

Additionally, the *Joffe* court ruling – which analyzed multiple factors and found that the TCPA applies to text message calls – was rendered on September 20, 2005, over a year *prior* to Defendant's actions in this case. In short, there can be no dispute that Defendant had fair, ascertainable notice of the fact that the TCPA applies to text message calls. To state otherwise is simply factually disingenuous[14] and legally baseless.

## IV. CONCLUSION

Defendant provides no legal basis for dismissing Plaintiff's Complaint. Its efforts to have this Court ignore the plain meaning of the TCPA, ignore the applicable FCC rulings, and ignore relevant state and federal court precedent are legally and factually without merit. For all of the reasons set forth herein, Defendant's Motion to Dismiss should be denied.

---

[14] The Southern District of Indiana noted that a factor to be considered is whether a legitimately confused defendant actually made an inquiry about the meaning of the regulation at issue. *See Southern Indiana Gas*, 245 F. Supp. 2d at 1011-12. In this case, Defendant does not state that it was legitimately confused over the application of the TCPA to its actions, and if so, why it was confused, or what steps it took to remedy that confusion. Defendants cannot bury their heads in the sand (and ignore Congressional intent, relevant caselaw and FCC rulings) simply so that they can plead ignorance. Defendant could have requested a hearing with the FCC. Additionally, Defendant was capable of picking up a phone and calling the FCC or doing any sort of due diligence prior to engaging in its illegal activity. Any failure to do so was not accidental and, regardless, cannot be excused here for constitutional purposes.

Dated: September 18, 2009

                          Respectfully submitted,

                          SADAT ABBAS

                          BY:   /s/ Michael J. McMorrow
                          One of His Attorneys

Michael J. McMorrow
Evan M. Meyers
Ryan D. Andrews
KamberEdelson, LLC
350 N. LaSalle St., Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
mmcmorrow@kamberedelson.com
emeyers@kamberedelson.com
randrews@kamberedelson.com

## CERTIFICATE OF SERVICE

I, Michael J. McMorrow, an attorney, herby certify that on this 18th Day of September, 2009, I caused a true and accurate copy of the foregoing *Plaintiff's Memorandum in Opposition to Defendant Selling Source, LLC's Motion to Dismiss* to be served electronically to the parties registered with the Court's CM/ECF system.

/s/ Michael J. McMorrow
Michael J. McMorrow