UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SADAT ABBAS, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) | Case No. 09 CV 3413 |
| v. | ) ) | Judge Joan B. Gottschall |
| SELLING SOURCE, LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION & ORDER**

Plaintiff Sadat Abbas brought this putative class action against defendant Selling Source, LLC in the Circuit Court of Cook County, Illinois. Abbas alleges that Selling Source sent him and others like him unsolicited Short Message Service text messages ("SMS messages") from an "automatic telephone dialing system" in violation of the Telephone Consumer Protection Act of 1991, as enacted, 47 U.S.C. § 227 (the "TCPA"). Selling Source removed the suit, and the matter is presently before this court on Selling Source's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons stated within, the court grants Selling Source's motion to dismiss in part, and grants Abbas leave to re-plead consistent with this opinion.

---

[1] The motion does not address the sufficiency of Abbas's class allegations except insofar as Selling Source raises arguments regarding the TCPA that would be equally applicable to other members of the putative class. Therefore, the court takes no position on Abbas's class-specific allegations.

1

# I. LEGAL STANDARDS

**A.     Rule 12(b)(6)**

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed R. Civ. P. 12(b)(6).  In resolving a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  Legal conclusions, however, are not entitled to any assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S. Ct. 1937, 1040 (2009).  To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)).  However, the allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The plaintiff generally need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face . . . ."  *Twombly*, 550 U.S. at 570 .

**B.            The TCPA**

The relevant portion of the TCPA provides as follows:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

   (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

. . .

>    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1) (2006). The statute further defines "automatic telephone dialing system" (the "ATDS") as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

## II. ANALYSIS

Selling Source urges that this court should dismiss Abbas's Complaint because: (1) Abbas has failed to make a "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure, given the gloss of *Twombly*, 550 U.S. 544 and *Iqbal*, 129 S. Ct. 1937; (2) Abbas has failed to allege that he was charged for the SMS message he received, which Selling Source maintains is required to state a claim under the TCPA; (3) Abbas has failed to allege that the equipment that sent the subject SMS message was an ATDS; (4) the TCPA does not apply to SMS messages like the ones allegedly sent by Selling Source because a text message is not a "call" within the meaning of the statute and is not otherwise proscribed by the TCPA; (5) as applied, the TCPA would violate the First Amendment; and (6) as applied, the TCPA would be void for vagueness.

The court does not rule on a blank slate in resolving many of these questions; state and federal courts have addressed challenges to similar suits brought under the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009); *see also Joffee v. Acacia Mortgage Corp.*, 121 P.3d 831 (Ariz. Ct. App. 2005); *Pollock v. Island Arbitration & Mediation, Inc.*, 869 N.Y.S.2d 740 (N.Y. City Ct. 2008); *Satterfield v.*

*Simon & Schuster*, 2007 WL 1839807 (N.D. Cal. June 26, 2007) *rev'd* 569 F.3d 946. Also, the Federal Communications Commission (the "FCC"), which Congress tasked with implementing certain regulations under the TCPA, *see* 47 U.S.C. § 227(b)(2), has issued orders interpreting the TCPA. The court considers the case law and administrative opinions relevant to each contention.

**A.     Rule 8(a)(2)**

Selling Source first argues that Abbas has failed to satisfy federal pleading requirements. After alleging several facts regarding the initial, offending SMS message he allegedly received from Selling Source, Abbas makes broad, conclusory allegations regarding the "numerous" further messages that he allegedly received. *See* Compl. ¶¶ 17, 18. While Rule 8(a)(2) does not require facts to be pled with particularity, Abbas's allegations here provide no notice to Selling Source about the subsequent messages Abbas allegedly received. There is no allegation regarding when Abbas received the later messages, what those messages stated, or from what numbers he received the later messages. Some fair notice to Selling source is particularly necessary here because Abbas seeks recovery for each violation of the TCPA. *See* Compl. ¶ 26. Abbas's allegations regarding subsequent messages he received are insufficient but not beyond cure, and so his Complaint is dismissed with leave to amend.

**B.      "Charged"**

Selling Source also argues that Abbas's Complaint should be dismissed because he does not allege that he was charged for the offending SMS messages. According to Selling Source, the TCPA, which prohibits certain "call[s]" made "to any telephone number assigned to a paging service, **cellular telephone service**, specialized mobile

radio service, **or** other radio common carrier service, **or any service for which the called party is charged for the call**," *see* 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), is not violated unless "the called party is charged for the call." *See also* 47 C.F.R. 64.1200(a)(iii) (reiterating TCPA standard).[2] The phrase "for which the called party is charged for the call" clearly modifies "any service." What is less clear from this section alone is whether "any service for which the called party is charged" is a catch-all clause that equally describes the types of services that precede it, or whether the clause instead describes a different type of service (one in which the called party is charged) than those listed before it.[3]

Selling Source claims that a 1992 FCC Report and Order suggests that the TCPA requires a called party to be charged for a violation to occur. *See In the Matter of Rules and Regulations Implementing the Telephone Consumers Protection Act of 1991*, Report and Order, 7 F.C.C.R. 8752, 8775 (Oct. 16, 1992) (the "1992 Order"). In the 1992 Order, the FCC stated, "Based on the plain language of § 227(b)(1)(iii) [*sic*], we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular

---

[2] Abbas argues that he alleged that he and others were charged for messages received, rendering this issue moot. However, he cites paragraphs in his Complaint that simply state that consumers have to pay for SMS messages received. Compl. ¶ 2; *see also id.* ¶ 11. It is far from clear that Abbas alleges that he is one of those consumers, particularly given the variety of cellular telephone plans available and given arrangements wherein employers and other third parties reimburse the actual user of the telephone at issue.

[3] The parties urge that the doctrine of the last antecedent assists in construing the TCPA, but of course disagree as to how. The doctrine of the last antecedent is a canon of statutory construction that states that "where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it." *See O'Kane v. Apfel*, 224 F.3d 686, 690 (7th Cir. 2000) (internal citations and quotation marks omitted). As Selling Source points out, "Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." Norman J. Singer et al., 2A Sutherland Statutory Construction, § 47.33. Selling Source contends that "any service for which the called party is charged" is a "qualifying phrase" that modifies the rest of the list because it is separated by a comma from that list. But the qualifying phrase is clearly "for which the called party is charged," which modifies "any service." Abbas contends that this reading compels the conclusion that the TCPA does not require that calls be charged to the called party to be actionable. The court is unconvinced, though, in light of the problem outlined above: "any service" could mean "any other service" (*i.e.*, a catch-all which effectively modifies the earlier entries on the list), or could pose an alternative to the previous entries on the list.

customers for which the called party is not charged." *Id.* Not two weeks later, however, Congress amended the TCPA to provide that the FCC "may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party." *See* Pub. L. No. 102-556, 106 Stat. 4181, 4194-95 (Oct. 28, 1992), enacted as 47 U.S.C. § 227(b)(2)(C). If uncharged calls were already exempted from the requirements of the TCPA, as the FCC's 1992 Order and Selling Source maintain, the later congressional amendment would be wholly superfluous, as no FCC "rule or order" would be necessary to exempt such calls from the statute's purview.[4] Courts avoid such ineffective statutory construction. *See In the Matter of Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996).

Selling Source argues that the congressional amendment was technical and should be given no substantive effect. The amendment was indeed technical. *See* Pub. L. No. 102-556, 106 Stat. at 4194-95. But "a statute is a statute, whatever its label," and "the usual tools of statutory construction" should be used in interpreting a technical amendment. *See United States v. R.L.C.*, 503 U.S. 291, 305 n.5 (1992); *see also Mudge v. United States*, 308 F.3d 1220, 1229 (Fed. Cir. 2002). Employing one of those tools–

---

[4] The court further notes that the issue of whether a call to a party not charged for the call fell within the TCPA was not mentioned in the Notice of Proposed Rulemaking that preceded the 1992 Order. *See generally In the Matter of the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 2736 (Apr. 17, 1992). Moreover, as the 1992 Order states, the FCC's interpretation was based on the plain language of the TCPA, and not on any expert or technical understanding of the statute or the nature of services covered by the statute. The court is equally capable of statutory interpretation.
  Finally, the FCC, in a 2003 Report and Order relied on its 1992 Order to suggest that only charged calls are prohibited by the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003) (the "2003 Order"). But this suggestion does not specifically exempt calls for which the called party is not charged, *see* 47 U.S.C. § 227(b)(2)(C), and the court will not accord deference to the FCC for its bare announcement, for the reasons elaborated upon in section II.D.1.b within.

reading statutes as a whole–the court finds that the TCPA does not require that a party called via a number assigned to a cellular telephone service must be charged for the call to make that call actionable.

Finally, while Selling Source argues that congressional intent indicates that Congress was primarily concerned with cost-shifting (and that consequently the TCPA should not apply to calls not charged to the called party), Congress was just as concerned with consumers' privacy rights and the nuisances of telemarketing. *See Bonime v. Avayu*, 547 F.3d 497, 499 (2d Cir. 2008) ("Congress's stated purpose in enacting the TCPA was to protect the privacy interests of residential telephone subscribers . . . ."); *see also* Section II.E.1 *infra*. Automated calls invade privacy and pose nuisances regardless of whether the called party is charged for the call, and so congressional intent is furthered by the TCPA's application to both charged and uncharged calls.

**C.     ATDS**

The second issue is whether Abbas has sufficiently alleged that the SMS messages he received came from an ATDS. The TCPA defines an ATDS as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Abbas has parroted that language in his Complaint. Compl. ¶ 25. While this allegation is a bare legal conclusion entitled to no weight, *see Iqbal*, 129 S. Ct. at 1040, Abbas also alleges that Selling Source used an "SMS short code," for which it had a license, to send him the initial SMS message. Compl. ¶ 14. Also, the text of the SMS message Abbas allegedly received clearly suggests that it is from an institutional sender without any personalization. *Id.* ¶ 15. Finally, Abbas alleges that Selling Sources sent

7

"mass transmissions of wireless spam" to potential customers. *Id.* ¶ 12. Last, there is no indication that Selling Source had any reason to call Abbas's number aside from telemarketing purposes. These allegations flesh out the conclusion above; the court can reasonably infer that Selling Source obtained a license for a SMS short code by which it sent mass SMS messages to Abbas (and, perhaps, others) using equipment with some automated capacity.

The question remains whether Abbas must allege that Selling Source actually used the equipment's automated capacity, or whether Abbas can simply allege that the equipment had the capacity to do so. The plain text of the statute requires only "the capacity" for such random or sequential generation, *see* 47 U.S.C. § 227(a)(1), and the implementing regulations impose no higher burden. *See* 47 C.F.R. § 64.1200(f)(1). The Court of Appeals for the Ninth Circuit found this clear language mandated only allegations of "capacity," *see Satterfield*, 569 F.3d at 950, and this court agrees. Therefore, Abbas needs only to allege that the equipment that Selling Source used to send him SMS messages had the capacity to produce or store and dial numbers randomly or sequentially.[5]

**D.     The TCPA and SMS messages**

Selling Source also contends that the TCPA applies only to "call[s]," and not to SMS messages. Abbas counters that FCC orders finding that SMS messages are indeed "call[s]" should guide this court's interpretation of the TCPA. Resolution of this issue requires examination of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,

---

[5]     The FCC has suggested that "capacity" is sufficient to render equipment an ATDS. 2003 Order, 18 F.C.C.R. at 14092-93. However, as discussed in section II.D.1.b. within, the FCC's suggestions, in the absence of formal notice-and-comment rulemaking on the issue, are not entitled to deference.

8

467 U.S. 837 (1984), and its progeny regarding judicial review of administrative decisions.

    1.    *Chevron* deference

In *Chevron*, the Supreme Court announced a two-part test for judicial review of an administrative agency interpretation of a congressional statute that the agency administers. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).[6] First, the court must examine whether Congress has "directly spoken to the precise question at issue"–in this case, whether the definition of "call" includes an SMS message. *Id.* at 842. If so, congressional intent governs, but if not, courts may give deference to the agency's interpretation as the administrative process preceding that interpretation and the interpretation's persuasiveness warrant. *See United States v. Mead Corp.*, 533 U.S. 218, 229-31 (2001).

    a.    <u>Whether Congress has defined "call"</u>

The first question is whether Congress "has directly spoken to the precise question at issue," either by defining an ambiguous term or by using an unambiguous term that clearly evinces congressional intent. *See Chevron U.S.A.*, 467 U.S. at 842-43. "The starting point in statutory interpretation is the language of the statute itself." *Ardestani v. I.N.S.*, 502 U.S. 129, 135 (1991) (citations and quotation marks omitted). In enacting the TCPA, Congress prohibited certain automated "call[s]," but did not define

---

[6]     It is undisputed that the FCC administers the TCPA. *See* 47 U.S.C. § 227(b)(2) (authorizing the FCC, *inter alia*, "to prescribe regulations to implement the requirements of this subsection"); *see also Balt.-Wash. Tel. Co. v. Hot leads Co., LLC*, 584 F. Supp. 2d 736, 743 (D. Md. 2008) (describing FCC's "broad discretion to issue regulations 'reasonably related' to the purposes of the TCPA"). Consequently, FCC interpretations of the TCPA are properly analyzed pursuant to the *Chevron* two-part test.

the term "call," *see* 47 U.S.C. § 227(b)(1), so the court next turns to that word's ordinary meaning. *See Perrin v. United States*, 444 U.S. 37, 42 (1979).

Selling Source argues that the definition of "call" does not accommodate SMS messages. *See* Mem. 13. The parties engage in a battle of the dictionaries resulting in a draw: the definition of "call" includes "to communicate with or try to communicate with a person by telephone," which could include SMS messages, but does not demand as much. *See, e.g.*, *Webster's Third New International Dictionary of the English Language, Unabridged* 318 (1961). Definitions aside, Selling Source maintains that the SMS messages are fundamentally different in nature from what it characterizes as "[a]utomated oral calls." *See* Mem. 14; *see also id.* 12 n.3. True as this may be, neither the above-quoted dictionary definition nor the TCPA requires that a "call" be "oral." Indeed, if such a requirement existed, the TCPA's prohibition on calls to "a paging service," *see* 47 U.S.C. § 227(b)(1)(A)(iii), would be of little effect.

Selling Source raises the further historical point that Congress could not have intended to prohibit SMS messages when it enacted the TCPA in 1991 because SMS messages were not in use until the following year. *See* Mem. 11; *see also* J. Wesley Harned, Note, *Telemarketers Gone Mobile: The Telephone Consumer Protection Act of 1991 and Unsolicited Commercial Text Messages*, 97 Ky. L.J. 313, 314 (2009) (noting that the first SMS message was sent in 1992). Neither party cites any authority on point,[7]

---

[7] *McBoyle v. United States*, 283 U.S. 25, 26 (1931), a case cited by Selling Source, is inapposite. In that case, the Supreme Court determined that an airplane was not a "vehicle" and specifically noted, "[a]irplanes were well known in 1919 when this statute was passed, but it is admitted that they were not mentioned in the reports or in the debates in Congress." *Id.* Selling Source claims that *McBoyle* is of even greater force here because Congress could not have even contemplated SMS messages when passing the TCPA. *See* Reply 17. The court agrees with Selling Source that *McBoyle* is silent as to later-derived technologies such as the SMS messages at issue here, but unlike Selling Source finds *McBoyle* inapplicable to resolution of the instant question.

but the Seventh Circuit has criticized Selling Source's proposed method of statutory interpretation. It noted that such a canon of construction would lead to "absurd" results, including that "a 1925 statute dealing with 'news media' could not apply to television, and a 1930 statute dealing with 'motor cars' could not apply to Volkswagons." *See Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984) (quoting Frederick Reed Dickerson, *The Interpretation and Applications of Statutes* 129 (1975) (internal quotation marks omitted)). The court finds this guidance instructive, and so the non-existence of SMS messages when the TCPA was enacted does not preclude the application of the latter to the former.

Finally, Selling Source argues that Congress did not mean "call" to include SMS message because prospective amendments to expressly apply the TCPA to SMS messages, and because the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 *et seq.* (the "CAN-SPAM Act") applies explicitly to text messages. *See* Mem. 11-17. These points are not well-taken. The CAN-SPAM Act, regardless of its application to SMS messages, clearly states, "Nothing in this chapter shall be interpreted to override the applicability of" the TCPA. *See* 15 U.S.C. § 7712(a). Subsequent legislation provides at best an uncertain indicator of previous congressional intent, *see Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 118, n.3 (1980); all the more uncertain here, where the later Congress specifically disavowed any inferences to be drawn from its enactment. Proposed legislation is even further removed than subsequent legislation from the

---

The Ninth Circuit in *Satterfield* noted this technological issue and without further discussion determined that a "call" could include an SMS message. *See Satterfield*, 569 F.3d at 954; *see also Joffe*, 121 P.3d 831.

11

meaning of the original statute, given the uncertainty that it will ever be enacted, so a proposal by two senators to amend the TCPA to apply to SMS messages explicitly, *see* S. 788(3), 111th Cong. (2009), is of no force in interpreting congressional intent in enacting the TCPA eighteen years ago. *See United Stationers, Inc. v. United States*, 982 F. Supp. 1279, 1283 (N.D. Ill. 1997) (finding that proposed regulations carry no weight as legal authority). Consequently, the court finds such subsequent legislative activity irrelevant, and finds the term "call" within the TCPA ambiguous.

        b.        <u>Deference and Administrative Procedures</u>

Because the term "call" is ambiguous, the court considers what degree of deference is due the FCC's administrative interpretation. The Court has expanded its holding in *Chevron*, which granted deference only to formal notice-and-comment rulemaking. *See Chevron, U.S.A.*, 467 U.S. at 857-59; *see also Mead Corp.*, 533 U.S. at 229-31. Whether an agency's non-rulemaking interpretation is entitled to *Chevron* deference depends on "'an apparently open-ended list of factors,'" *see Krzalic v. Republic Title Co.*, 314 F.3d 875, 879 (7th Cir. 2002) (quoting Richard J. Pierce, Jr., *Administrative Law Treatise*, § 3.5, at 6-7 (4th ed. Supp. 2003)), including "the agency's care, its consistency, formality, . . . relative expertness, and . . . the persuasiveness of the agency's position." *Mead Corp.*, 533 U.S. at 228. However, an agency interpretation must be preceded by some minimum of process to merit deference; simple agency pronouncements, opinion letters, and policy statements fall below that minimum. *See Krzalic*, 314 F.3d at 881; *see also Sehie v. City of Aurora*, 432 F.3d 749 (7th Cir. 2005).

        Here, the FCC issued an order stating in relevant part:

> We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message

> to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003) (the "2003 Order").

The FCC referenced the 2003 Order one year later in addressing regulations implementing the CAN-SPAM Act, stating:

> In 2003, we released a Report and Order in which we reaffirmed that the TCPA prohibits *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. We concluded that this encompasses both voice calls and text calls, including Short Message Service (SMS) text messaging calls, to wireless phone numbers.
>
> . . .
>
> We noted that the TCPA and Commission rules that specifically prohibit using automatic telephone dialing systems to call wireless numbers already apply to any type of call, including both voice and text calls.
>
> . . .
>
> And, as we explained in the *NPRM* and a previous Commission order, the TCPA prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages (e.g., phone-to-phone SMS), as well as voice calls. We clarify here that this prohibition applies to all autodialed calls made to wireless numbers, including audio and visual services, regardless of the format of the message.

*In the matter of Rules and Regulations Implementing the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003*, 19 F.C.C.R. 15927, 15931, 15933, 15934 (Aug. 4, 2004). One month later, the FCC, turning back to the TCPA, again stated:

> In 2003, the Commission released a Report and Order (2003 TCPA Order) revising the TCPA rules to respond to changes in the marketplace for telemarketing. . . . [W]e determined that the TCPA prohibits *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. We concluded that this encompasses both voice calls and text calls to wireless numbers including, for example, Short Message Service calls.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 F.C.C.R. 19215, 19224-25 (Sept. 21, 2004).

Selling Source maintains that the Notice of Proposed Rulemaking (the "NPRM") that preceded the 2003 Order made no mention of any interpretation of the term "call," and therefore is entitled to no deference. *See generally In re Rules and Regulations Implementing Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking and Memorandum Opinion and Order, 17 F.C.C.R. 17459 (Sept. 18, 2002). The NPRM, while seeking comments on a variety of matters, does not mention SMS messages or any similar term, and does not reference any definition of "call." As a result, this portion of the 2003 Order is not entitled to *Chevron* deference because the FCC articulated it without any process. *See Krzalic*, 314 F.3d at 881 (noting that agency must engage in "something more formal, more deliberative, than a simple announcement" to warrant deference). Nor is this portion of the 2003 Order entitled to *Mead* deference. The FCC provided no justification for its statement that a "call" "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." 2003 Order, 18 F.C.C.R. at 14115 & n.606. Moreover, its determination that "call[s]" include SMS messages does not appear to be based on a technical or expert understanding of SMS messages, *see Mead Corp.*, 533 U.S. at 228, but rather appears to be based on an interpretation of the TCPA's text and legislative purpose. *See* 2003

14

Order, 18 F.C.C.R. at 14115. This court is equally capable of such interpretation, and so concludes the 2003 Order is entitled to no deference.

      2.      <u>Whether an SMS message is a "call"</u>

Turning to an independent examination of whether an SMS message is a "call," the court notes, as discussed above, that the term "call" is an ambiguous term which might encompass an SMS message. In *Satterfield*, the Ninth Circuit noted that "text messaging is a form of communication used primarily between telephones," and is therefore consistent with the definition of "call." 569 F.3d at 954. Congress, for its part, found that cheap, pervasive telemarketing practices needed to be controlled, *see* Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2, 105 Stat. 2394 (1991) (codified as amended at 47 U.S.C. §§ 227, 152, & 331 (2006)), and intended to restrict unsolicited, automated advertisements and solicitations by telephonic means. *See* S. Rep. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968; *see also* H.R. Rep. 102-317, at 5-6 (1991). The court agrees with the FCC's interpretation that congressional findings and intent apply with equal force to SMS messages. The court concludes that an SMS message is a "call" within the meaning of the TCPA.

**E.    The TCPA and the First Amendment**

Selling Source next argues that Abbas's complaint should be dismissed because the TCPA as applied to SMS messages violates the First Amendment. The constitutionality of the TCPA as applied to facsimile transmissions has been challenged repeatedly and upheld consistently. *See, e.g.*, *Holtzman v. Caplice*, No. 07 C 7279, 2008 WL 2168762, at *3 (N.D. Ill. May 23, 2008) (collecting cases). However, the TCPA's prohibition on facsimile transmissions applies to "unsolicited advertisement[s]," *see* 47

U.S.C. § 227(b)(1)(C), while the provision of the TCPA applicable here applies to "call[s]," whether advertisements or otherwise. *See id* § 227(b)(1)(a). As Selling Source argues, the TCPA's prohibition on "call[s]" is a content-neutral time, place, and manner restriction on speech. *See Joffe*, 121 P.3d at 841. Such restrictions are constitutional if (1) they serve a significant government interest, (2) are narrowly tailored to serve that interest, and (3) leave open ample alternative channels for the communication of the information. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 791 (U.S. 1989) (citing cases); *see also Horina v. City of Granite City, Ill.*, 538 F.3d 624, 631 (7th Cir. 2008).

    1.    <u>Significant government interest</u>

In enacting the TCPA, Congress noted the nuisance of rampant telemarketing and the consequent costs of money, time, and the invasion of privacy to consumers. S. Rep. 102-178, at 1, *reprinted in* 1991 U.S.C.C.A.N. at 1969; *see also* H.R. Rep. 102-317, at 2. Congress further found that consumers were helpless to prevent such unwanted telemarketing calls, and were particularly unable to stop the calls via direct requests to the telemarketers themselves. S. Rep. 102-178, at 2, *reprinted in* 1991 U.S.C.C.A.N. at 1969. Continuous advances in technology made automated telemarketing all the more cost-effective (and, in turn, all the more widely used). *Id.*, *reprinted in* 1991 U.S.C.C.A.N. at 1969-70; *see also* H.R. Rep. 102-317, at 7-8. Recognizing these problems, Congress found that it had a substantial interest in protecting the privacy of consumers and in preventing the above-described nuisances. S. Rep. 102-178, at 4, *reprinted in* 1991 U.S.C.C.A.N. at 1971-72.

Selling Source points out that Congress did not articulate a specific interest in proscribing automated SMS messages (nor could it have), Mem. 21-22, but Selling

Source cites no authority suggesting that Congress needed to articulate a substantial government interest for each type of "call," whether oral telephone call or SMS message, it proscribed. Moreover, the above-articulated substantial interests apply equally to SMS messages and oral telephone calls. Selling Source's next argument that "[p]ervasive use of cell phones makes them far different from the land lines Congress had in mind when it passed the TCPA," *id.* 22, proceeds from a false premise, as the TCPA plainly applies to cellular, paging, and other wireless services and not just "land lines." *See* 47 U.S.C. § 227(b)(1)(A)(iii). Selling Source's final argument, that "the telephone can be easily ignored," Mem. 23, ignores the congressional findings discussed above.

The TCPA, as applied to SMS messages, advances substantial government interests in protecting consumer privacy and in shifting the costs, pecuniary and otherwise, of telemarketing practices.

    2. <u>Narrowly Tailored</u>

A statute is narrowly tailored to serve a substantial government interest "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472. U.S. 675, 689 (1985)). In advancing its substantial interest, the restriction at issue cannot "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* Selling Source again cites the CAN-SPAM Act and the proposed revisions to the TCPA–both of which reference SMS messages–as evidence that the TCPA as applied to SMS messages is not narrowly tailored but rather redundant. But the CAN-SPAM Act's promulgated regulations prohibit certain SMS messages in commercial speech without providing a private cause of action, which the

TCPA provides. *See* 47 C.F.R. § 64.3100; *see also* 47 U.S.C. § 227(b)(3). The TCPA's private right of action furthers the congressional purpose of protecting consumer privacy and shifting telemarketing costs in a way that the CAN-SPAM Act does not. Additionally, the proposed revisions to the TCPA are, as discussed above, of no force at the moment. The court finds that the TCPA is narrowly tailored to advance government's substantial interest in protecting the privacy of consumers, particularly from the nuisance of automated calls.

      3.      <u>Alternative Means</u>

Last, Congress left open to telemarketers and others covered by the TCPA non-automated, live methods of communication. *See* 27 U.S.C. § 227(b)(1)(A). Automated dialers seeking to avoid the strictures of the TCPA may find several imaginative ways around prohibitions on automated SMS messages. *See Moser v. F.C.C.*, 46 F.3d 970, 975 (9th Cir. 1994). That such dialers are "hamstrung" by the TCPA, Mem. 25, is no basis to invalidate it. *See id.* (finding that "the cost and efficiency of automated telemarketing does not prevent Congress from restricting the practice") (citing *Kovacs v. Cooper*, 336 U.S. 77, 88-89 (1949)). The court finds that Congress left open ample alternative channels through which telemarketers and other would-be automated callers can communicate.

**F.    The TCPA and Vagueness**

Selling Source's last challenge to the TCPA is based on the purported vagueness of the TCPA. In support of this argument, Selling Source recapitulates its arguments that the text of the TCPA does not mandate that an SMS message constitute a "call" or that an ATDS can have the capacity to generate numbers randomly or sequentially without use

for that purpose. *See* Mem. 25-26. Selling Source is incorrect as to the "capacity" question; that definition of ATDS derives directly from a straightforward reading of the TCPA. *See United States v. Walton*, 36 F.3d 32, 35 (7th Cir. 1994) (holding that statute was not vague that "explicitly and clearly forbids" certain conduct).

Moreover, Selling Source misstates the vagueness standard. The question is not what could be deduced just from a reading of the statute, but what a person of ordinary intelligence should know from reading the statute and relevant outside materials, such as administrative and judicial opinions. *See Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (articulating ordinary person standard); *see also Botosan v. Paul McNally Realty*, 216 F.3d 827, 836-37 (9th Cir. 2000) (determining vagueness by reference to statute, regulations, and interpretive handbook). By November 2006, when Selling Source allegedly sent the offending SMS message to Abbas, the FCC and the *Joffe* court had already adopted the view that "call" under the TCPA includes SMS messages. *See generally* 2003 Order; *Joffe*, 121 P.3d 831. These extrinsic aides provided Selling Source with sufficiently fair notice of the potential application of the TCPA to its alleged dissemination of SMS messages.

### III. CONCLUSION

For the reasons stated above, the court grants Selling Source's motion to dismiss in part and grants Abbas leave to re-plead in a manner consistent with this opinion.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 14, 2009