**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SADAT ABBAS, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No.  1:09-CV-3413 |
| v. | ) ) ) | Judge Joan B. Gottschall<br>Magistrate Judge Maria Valdez |
| SELLING SOURCE, LLC, a Delaware limited liability company, | ) ) ) | |
| *Defendant*. | ) ) | **Jury Trial Demanded** |

------------------------------------------------------------x

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Sadat Abbas ("Abbas") brings this First Amended Class Action Complaint against Defendant Selling Source, LLC ("Selling Source") to stop Defendant's practice of making unauthorized text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct.  Plaintiff, for his First Amended Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE CASE

1.      In an effort to promote its clients' consumer credit products, Defendant, a self-described "provider of technology and marketing solutions to the specialty finance industry," engaged in a relatively new and especially pernicious form of marketing:  the transmission of unauthorized advertisements, in the form of "text message" calls, to the cellular telephones of consumers throughout the nation.

1

2.      By effectuating these unauthorized text message calls (hereinafter, "wireless spam" or "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers actually have to pay their cell phone service providers for the receipt of such wireless spam.

3.      In order to redress these injuries, Plaintiff, on behalf of himself and a nationwide class of similarly situated individuals, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited voice and text calls to cell phones.

4.      On behalf of the class, Plaintiff seeks an injunction, requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class, together with costs and reasonable attorneys' fees.

**PARTIES**

5.      Plaintiff Sadat Abbas is a citizen of Illinois.

6.      Defendant Selling Source, LLC is a nationwide provider of technology and marketing services to the payday loan industry and other consumer finance companies.  It operates through, controls and/or is successor in interest to many affiliated entities with names such as AbsoluteROI, Inc., among others.  It is a Delaware limited liability company with its principle place of business in Nevada.  It does business throughout the United States, including in Illinois and this district.

**VENUE**

7.      Venue is proper in this district under 28 U.S.C. § 1391 (b)(1) as Defendant is subject to the jurisdiction of this Court pursuant to 735 ILCS 5/2-209.

2

## CONDUCT COMPLAINED OF

8.      In recent years, marketers, who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail, have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

9.      One of the newest forms of such bulk marketing is to advertise through Short Message Services.  The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

10.      An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device.  When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

11.      Unlike more conventional advertisements, wireless spam actually costs its recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether the message is authorized.

12.      Beginning in at least 2006 and continuing for months if not years thereafter, Defendant and its agents intentionally caused mass transmissions of wireless spam to the cell phones of what it hoped were potential customers of its clients' consumer loan products.

13.      On or about November 29, 2006, Plaintiff's cell phone rang, indicating that a text call was being received.

3

14.     The "from" field of the transmission was identified cryptically as "22741," which Plaintiff later learned was an abbreviated telephone number known as an SMS short code licensed and operated by Defendant.

15.     The body of the text message Plaintiff received read:

        U QUALIFY 4 UNSECURED EXPRESS GOLDMASTERCARD
        FOR $350 CREDIT LINE. ALL APPLICATIONS ACCEPTED.
        INSTANT APPROVAL. GO TO WWW.GOLDMC3.COM

16.     Plaintiff responded to the wireless spam text message identified above by replying via text message with the word "Stop."

17.     At no time did Plaintiff consent to the receipt of such wireless spam from Defendant.

## CLASS ALLEGATIONS

18.     Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3), on behalf of himself and a class defined as follows:  A class (the "Class") consisting of Plaintiff and all others nationwide who received one or more unauthorized text message advertisements from Defendant; provided, however, that Defendant and any employee of Defendant are excluded from the Class.

19.     Upon information and belief, there are over 1,000 members of the Class, such that joinder of all members is impracticable.

20.     Common questions of law and fact exist as to all members of the Class and such questions predominate over questions affecting Plaintiff or individual Class members.  Common questions for the Class include:

        (a)     Whether the wireless spam Defendant distributed violates the TCPA;

4

      (b)     Whether the Class members are entitled to treble damages based on the

willfulness of Defendant's conduct;

      (c)     Whether the conduct described above violates the Class's right to privacy.

21.    Plaintiff will fairly and adequately protect the interests of the Class, his claims are typical of the claims of the members of the Class, and he has retained counsel competent and experienced in similar class action litigation.

22.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the respective Class is impracticable, and (b) many members of the Class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

**COUNT I**
**(Violation of the TCPA, 47 U.S.C. § 227, On behalf of the Class)**

23.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

24.    Defendant made unsolicited commercial text calls to the wireless telephone numbers of Plaintiff and the other members of the Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

25.    These text calls were made without the prior express consent of Plaintiff or the Class.

26.    Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it "unlawful for any person within the United States...to make any call (other than a call

5

made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice..." As a result of Defendant's illegal conduct, the members of the class suffered actual damages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each such violation of the TCPA.

27. Because Defendant's misconduct was willful and knowing, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the Class.

WHEREFORE, Plaintiff Sadat Abbas, on behalf of himself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all wireless spam activities;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief the Court deems equitable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated:  January 13, 2010                          SADAT ABBAS, individually and on behalf of a
                                                                           class of similarly situated individuals

                                                                            _/s/ Myles P. McGuire
                                                                           One of Mr. Abbas's Attorneys

Michael J. McMorrow
Ryan D. Andrews
Evan M. Meyers
KamberEdelson, LLC
350 North LaSalle Street
Suite 1300
Chicago, Illinois 60654
t: 312/589-6370
f: 312/589-6378